Caldwell, J.
This case presents the single question, whether this property is the proper subject of taxation ? Does it come within the exemption of the tax law of March, 1848 ? The 3d section of that statute reads as follows: “ All property described in this section, to the extent herein limited, shall be exempt from taxation; that is to say, First, All buildings occupied or used exclusively as public school houses, or as places of public worship, or both, with the *113 furniture and books therein used, exclusively for the accommodation of schools or religious meetings, together with the grounds, not exceeding, in any case, twenty acres, occupied thereby, if not leased or otherwise used with a view to profit. Second, All lands used exclusively as grave-yards or grounds for bury ing the dead. Third, All buildings belonging to scientific, literary, or benevolent societies, used exclusively for scientific, literary or benevolent societies, together with the land actually occupied by such institutions, not leased or otherwise used, with a view to profit, and all books, papers, furniture, apparatus, and instruments belonging to said societies, used solely for literary, scientific, or benevolent purposes. Fourth, All moneys and credits belonging exclusively to universities, colleges, academies or public schools, of whatsoever name, or to religious, scientific, literary or benevolent societies, and appropriated solely to sustaining such institutions or societies, not exceeding- in amount or in the income arising thereon, the'amount prescribed by the charter of such society.”
On the part of the Cincinnati college, it is contended, that although this property is not immediately used for literary or scientific purposes, yet the fact, that the fund is to be appropriated to such uses, brings it within the exceptions of this statute.
The language of the statute is very specific. The legislature appears to have been very careful to use as explicit terms as the language would afford. The buildings belonging to scientific and literary societies, are to be used “ exclusively ” for scientific and literary purposes, to bring them within the exemption.
' It would, we think, be rather a forced construction of language, to say 'that this building, with its eight stores, its merchant’s exchange, and its other rooms used for miscellaneous purposes, is used exclusively for literary and scientific purposes. But the legislature, not satisfied with the very explicit terms which chey had used, as if to place their meaning beyond all possibility of misapprehension, proceed *114 to specify that it shall not be leased, or otherwise used with a view to profit. This property is most of it leased and used with a view to profit. We suppose the plain and palpable meaning of this statute is, that the houses and property which these different institutions need to use whilst engaged in the pursuit of their respective objects, shall be exempt from taxation. Such property,, when thus used, does not produce an increase. It is used for purposes other than making money; and as the objects for which it is used are beneficial to community, it is exempted from the burdens imposed upon other property.
But when any society, no matter of what kind, whether scientific, literary, or religious, enters the common business of life, and uses property for the purpose of accumulating money, the government should, and we think the statute does, treat it in the same way persons are dealt with, who are using property in a similar manner, and engaged in the same business. Government cannot discriminate between the uses which different societies or individuals will make of the proceeds of their business, and determine that this society or individual will make a more worthy disposition of the proceeds of his business than that, and therefore the one shall be taxed and the other not.
The legislature could not, without a flagrant violation of the principles of equality, on which our institutions are founded, make a distinction such as is contended for, between the store of the Cincinnati college and that of an individual. The legislature, in this instance, at least, appears to have been careful not to make any such improper discrimination.
The third enumeration of this section of the statute, relating to the buildings of such societies, is the only one that we think could be supposed to have any bearing on this case; the fourth, however, appears equally explicit to the same point; it refers to the money belonging to such institutions, and exempts such as is “ solely appropriated to sustaining such institutions.”
Whilst the money is in the fund of the institution, to be used solely to meet its expenditures, it is making nothing, it *115 is withdrawn from the common business of life to be used solely to effect the object of such institution. But should the trustees of the society use such money in business, either investing it in property, or loaning it at interest, the property thus purchased, or the money thus loaned would be liable to taxation, as much as any other property or money at interest, no matter in whose hands it might be. As we have before intimated, the law applies to the property as it finds it in use, and not to what may be done with its accumulations in future.
It is said, in behalf of the appellants, that this law should* be liberally construed in favor of the institution, its object being to promote science and literature. We think, however, that all laws that exempt any of the property of the community from taxation should receive a strict construction. All such laws are in derogation of equal rights.
The money necessary to support government, has to be raised by a tax on the beneficial pursuits of community; it all is raised from the proceeds of industry. If property, employed in one kind of business, is exempted from taxation, the burden will necessarily fall more heavily on property employed in other pursuits. It is hard to discover why those employed in producing what feeds and "clothes humanity, should not be regarded as favorably by government as those engaged in the more elegant or intellectual arts.
There is no one source of oppression or injustice which has been productive of so much human misery all over the world, and in all ages of it, as the discrimination which government, in imposing their burdens, have made between the different occupations of life, encouraging one at the expense of another.
We think the auditor of state has decided in accordance with both the law and equity of the case, and therefore con firm his decision.